Good afternoon, Your Honors. May it please the Court, Daniel Collins, Munger, Tolles, and Olson on behalf of Appellant Philip Morris USA. The central question in this case is whether the First Amendment has any applicability whatsoever to the ordinance that is under review. We conceded that the ordinance does not, on its face, catch expressive conduct. This isn't a case where the conduct described in the ordinance is, as applied in this case, expressive. Rather, we've invoked a separate line of cases that say that when the ordinance, although it reaches only non-expressive conduct, has the inevitable effect of singling out those engaged in expressive activity or imposes a disproportionate burden and does that in a manner that raises an objective suspicion that sensorial motivation may be afoot, that that triggers a First Amendment scrutiny. Here, that standard is satisfied because ---- Sensorial. How is that? Sensorial in the sense that advertising and communicative displays that were present have been removed. And it is done ---- Who chose to remove them? Well, we removed them in compliance with the ordinance. We were required to remove the products, the displays. But you weren't required to remove the advertising. We submitted a declaration indicating that based from our VP of sales, that based on his 22 years of experience in marketing and retail sales, that retailers are not going to agree to have large displays like the ones we have here of advertising for products that they don't sell. It annoys their customers, tantalizes them, particularly in the context of tobacco, where the advertising is so infrequently seen today, basically one of the ---- So are you saying that the retailers required you to remove it? We were required to remove the products. Yes, but not the advertising. Well, the ---- but the retailer isn't going to continue. Well, we don't know that. Well, they didn't present any evidence to the contrary, and it still is a burden. Their point is that, well, there's some price at which this market would clear. You could, you know, say, well, I'll up the price, I'll give you more. If that's true, it doesn't get them anywhere. It's still a burden on the advertising, and it is an intentional burden, we would submit, on the facts here. The fact that that burden, that that price now has to be paid, it can't all be cleared as part of ---- Isn't that any ---- is that any different from the burden of advertising generally? I mean, if you want to run an ad on television, you have to pay for the ad, and you have to pay for the space on television. Or if you want to advertise on a website, for example. I realize you don't advertise on television, so I'm not speaking specifically about advertising. But, you know, that's the way advertising works. You have to pay for the ad, and you have to pay for the space where the ad is located. So why isn't saying, you know, these retailers no longer want to put the advertising up for free because they're not selling the product? You have to pay them. Why isn't that just like saying you have to pay for advertising a space elsewhere? Of course you have to pay for advertising. And the whole Retail Leaders Program, as described in the declarations here, they are paid and there are incentives that are provided for allowing this kind of space and advertising. But where an ordinance has the effect of eliminating a method of advertising and allowing only alternatives that are far more expensive, then that is a burden that if it is done in circumstances that objectively suggest a risk of sensorial intent, that triggers First Amendment scrutiny. It doesn't say that it survives necessarily. You just have to go through an analysis. But it's sufficient to trigger. The other aspect in which the district court was wrong here is that the district court ignored the de jure effect of the Master Settlement Agreement, which at least with respect to outdoor advertising links together with the ban on sales to prevent there from being any kind of window display or outside advertising at stores that don't sell tobacco products. So those two things, both the fact that it does impose a burden and it does have a de jure, at least partial, effect on the tobacco advertising, and it was considered a juror. This is the consent decree, right? It is a consent decree. But it remains part of the background principles against which this is at. I have a little more of a hard time treating a consent decree as being de jure. I mean, clients have to all agree to it. It's a contract. It's backed by judicial enforcement. But it's agreed. If you agree not to speak, people can give up rights. And the right to free speech is no different from anything else. If somebody wants to sort of pay me money not to march in a Fourth of July parade, and I say I'll give you $100 to stay home, you say, well, sure, I'll take the $100 and stay home. There's nothing legal about that, right? Well, two responses. First, the city is certainly aware, since it had been involved in the litigation resolved in the master settlement agreement, it's certainly aware of the restrictions that are in place on tobacco advertising. So when it adds a restriction at the margin, I don't think that the fact that the we ignore the existing framework. But a second response is that there's a provision, and I cited this in the reply brief, of the San Francisco police code that actually duplicates that provision of the master settlement agreement. It actually goes further. It's a stricter provision. But it would also have the interlocking de jure effect once you ban the sale within the store of presenting of preventing the outside advertising from being shown. The problem with your basic argument is that any time the government bans the sale of anything, it becomes a First Amendment issue. The government says you can't buy heroin. First Amendment issue, because we are heroin producers, and I forget where heroin is made in Turkey or Honduras, one of those places, and we'd like to advertise, you know, buy heroin. You know, have a good, you know, enjoy yourself. Everything that you ban, or we had a case involving pig meat. But California has a restriction. You can't sell horses for human consumption. And that becomes a First Amendment issue. I think that, in fact, that isn't true, and the reason why is because of the very important limitation that the Leathers court put on this second line of cases. I think it was always implicit in the second line of cases, but they made it explicit in Leathers, where they indicated that a differential burden on a particular group of speakers is not alone sufficient to trigger First Amendment scrutiny. It must be that the objective circumstances indicate either an intent or a risk that censorial, that a censorship of ideas or hostility to ideas is at foot. I think that will rarely be the case in regulations of sales. What is unusual about this case, distinctive about it, is, first, that on the face of the ordinance in the recitals, there were three references to hostility to displays and advertising. And, second, that they have both in the recitals and the ordinance and then in the subsequent litigation, both in the State court and in this court, they've been unable to articulate a speech-neutral justification for this. And that reinforces the objective risk, and indeed, I think, the beyond risk, the reality that most burden is set to establish that there is a First Amendment violation. I think it is our burden to establish in the first instance that both of those elements of the Leathers test are met, that there's the differential impact or the singling out, and that there's an objective risk. Yeah. Earlier, in response to one of my questions, you said, well, they didn't provide any evidence that they would allow advertising, whereas, it seems to me, that's your burden to show that they wouldn't allow advertising. It is my burden, and I we presented evidence below in the context of declarations from the regional sales manager and from the VP of sales, that based on their experience in retailing, that retailers will not agree to accept large advertising for products that they don't sell. The city then didn't rebut that. That was my point, is that the evidence was unrebutted that, as it stood, and it's a common-sense proposition, really, their argument amounts to the notion that at some price, if we pay enough, then Walgreens and Rite Aid will agree to accept advertising for products that they don't sell on this kind of a scale. And they even suggest we could put the products in, in a lot of cases, and say, you know, you can get them down the street. I think it's fanciful to think that that will happen. I think it's contrary to the record. But even if it is, that's a substantial burden on First Amendment rights, and so I don't think it gets them out of this first prong. And I think the objective circumstances of the situation suggest that censorial ---- Kennedy. How do you ban a product for non-censorious reasons, but because you think it's a bad product or a damaging product? How do you ban a product without turning it into a First Amendment issue? I think there are lots of reasons why products get banned. They're objectively risky. There are limitations on the manner in which ---- Well, unlike cigarettes. Well, they have a licensing regime in place in San Francisco that you have to have a license in order to be able to sell cigarettes. There's a fairly strict regime here. It was ---- But you would agree that cigarettes are objectively risky. Well, I'll give you an example. I mean, they raised the issue of alcohol sales at sports arenas. Or suppose that there were cigarette sales. Could they ban that? I think there is a speech-neutral reason for doing that that raises no risk of censorship, which is the sense that if you sell something at a concession at a stadium, the odds are very high. Indeed, I think the expectation is that people will consume it on the premises. And if it's a no-smoking premise or they want there to be no consumption of alcohol, that is a speech-neutral reason for banning.  Well, apart from the First Amendment, do you have any problem with them banning cigarettes at drugstores? We have raised only the First Amendment issue. We also raised an equal protection issue that is similar to the Walgreens one, but that's not an issue in this preliminary injunction appeal. I see. But it's in the case. It is in the case. And the Walgreens case is set for argument in the State courts but has not been argued  But the only issues before, the threshold issue of First Amendment ---- Well, for purposes of this case, are you conceding that they could, just for purposes of the case, that they could ban the cigarettes without the censorial effect? Well, if we talk about ---- are you talking about banning cigarettes in pharmacies or more generally? Yes, in pharmacies. Just in pharmacies. The only issue we've raised is First Amendment and preemption. That's what you have before you. Does this trigger the First Amendment? I think if it triggers the First Amendment, I think you also then ---- it immediately leads to preemption because there's a provision on with respect to advertising. And if it's sufficient impact on advertising to trigger the First Amendment, it will trigger preemption as well. I'd like to reserve the remaining two minutes of my time for rebuttal unless you have questions. Thank you, Your Honor. Mr. Shaubria, I'm glad to see it's a case with Ninth Circuit law clerk graduates on both sides. Thank you, Your Honor. It's good to be back. Were the two of you clerking at the same time? Mr. Collins clerked for Judge Nelson. I was here in 99-2000. Judge Hugg was the chief when I was here. A very fine time. Very briefly, the central lesson, I think, from the commercial speech cases that the Supreme Court has decided is that there is a very sharp line between regulation of sales and regulation of advertising. If the government doesn't like a product, it may regulate the sales of that product. If the government chooses not to do so and instead regulates advertising about that product, speech about that product, it may well have a First Amendment problem. So here is San Francisco heeding the instruction of the court in Lorillard. And by the way, Lorillard said that specifically with respect to cigarettes. You have a First Amendment problem if you substantially restrict advertising, but you can regulate the sales of cigarettes. So here is San Francisco. So what if you do both at the same time? I suppose the ordinance said you may neither sell nor advertise. I think that would certainly implicate First Amendment scrutiny, and you would have to analyze it under the court's decision in Lorillard. But, of course, San Francisco hasn't done that here. It's only regulated sales. And, by the way, just as a parenthetical, speaking of heeding the direction of Lorillard, Mr. Collins cites this police code provision that purports to ban the advertising of cigarettes outdoors. Two points about that. One, if Philip Morris has a problem with the way that that ordinance interacts with this sales regulation, it should be challenging the speech regulation, not the sales regulation. But more importantly, that's another example of San Francisco heeding the Supreme Court's direction in Lorillard, because shortly after Lorillard was decided, San Francisco published notice in the local newspapers stating that that ordinance is no longer enforceable and would not be enforced because of Lorillard. So I believe that the case is straightforward and the issues have been adequately addressed in the briefs, and unless the Court has further questions, we're prepared to submit on that. Roberts. Mr. Collins, did you have anything further? No. Just to make a point with respect to the police code provision, that it is a de jure provision that does interlock with the current ordinance and, therefore, I think is relevant to the analysis of the current ordinance under the First Amendment. Thank you, Your Honor. Thank you. The case is signed. We'll stand submitted. We're adjourned.
judges: Kozinski, Hug, Reinhardt